**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ZACHARY P. BEASLEY, JEANETTE A. JEFFERSON-BEASLEY and IDEAS N MIND, INC.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 11 CV 4973** |
| **COMMONWEALTH EDISON COMPANY,** | ) | **Judge Rebecca R. Pallmeyer** |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Zachary Beasley, an employee of Defendant Commonwealth Edison Company ("ComEd") drew the image of a handshake. With Beasley's permission, ComEd used the handshake image on the cover of ComEd's 1997 Safety Rule Book. Years later, when Beasley discovered that ComEd used the image again on its 2003 and 2009 Safety Rule Books, Beasley, his wife, and the corporation they formed brought this action alleging copyright infringement under the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.*; unfair trade practices; and unfair competition. This court dismissed Plaintiffs' unfair trade practices and unfair competition claims. (*See* Jan. 30, 2012 Order [36].) The parties now bring cross motions for summary judgment on Plaintiffs' copyright infringement claims. For the reasons discussed below, the court concludes that the corporate Plaintiff alone has standing to enforce the copyright, but the damages it can recover, if any, are limited. Plaintiffs' motion for summary judgment of liability is denied, and Defendant's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

The following facts are drawn from the pleadings and the parties' Local Rule 56.1 submissions.[1] Defendant Commonwealth Edison Co. (hereinafter "ComEd") is a utility and energy

---

[1] Defendant challenges Plaintiffs' compliance with Local Rule 56.1(a)(3) on the ground (continued...)

delivery company serving the greater Chicago area. (Def.'s Local Rule 56.1 Statement of Facts [73] (hereinafter "Def.'s 56.1") at 1.) Plaintiff Zachary P. Beasley is a crew leader employed by ComEd. (Am. Compl. [32] ¶ 2.) Mr. Beasley began working for ComEd in 1979 as a meter reader. He was promoted to lineman in 1983, and took his current position in 1993. (*Id.*) Mr. Beasley is also an artist. He has been creating and selling artwork for many years, and has sold his work to friends, to fellow ComEd employees, and to other companies such as Kraft Foods. (Declaration of Zachary P. Beasley [77-2] (hereinafter "Z. Beasley Decl.") ¶ 2.) Plaintiff Ideas N Mind is an Illinois corporation created by Mr. Beasley and his wife, co-Plaintiff Jeanette A. Jefferson-Beasley, to produce artwork, clip art, logos, and graphic designs for advertising. (Am. Compl. ¶ 2.) The disputed image is a drawing, referred to as the handshake image, that depicts the gloved hand of a lineman shaking the hand of a foreman or supervisor. (Z. Beasley Decl. ¶ 7.)

ComEd had used artwork produced by Mr. Beasley on several occasions prior to the alleged infringement. Between 1993 and 1995, ComEd displayed some of Mr. Beasley's artwork on banners and posters. (Def.'s 56.1 ¶¶ 7, 8, 11.) At ComEd's request, Beasley also painted a utility worker scene on the side of a trailer at the company's University Park facility. (*Id.* ¶ 9.)[2] Throughout the early 1990s, ComEd hosted an annual event in connection with the International Brotherhood of Electrical Workers Local 15 known as the "Lineman's Rodeo." (Pls.' 56.1 Resp. ¶

[1](...continued)
that Plaintiffs' statement does not contain a description of the parties and does not assert facts supporting venue and jurisdiction. (Def.'s Reply [84] at 9 n. 8.) Assuming those requirements apply with equal force in a case such as this, where the parties have submitted cross-motions for summary judgment (and where Defendant does not challenge venue or jurisdiction), the court has discretion to excuse those requirements, *see Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000), and chooses to do so in this instance.

[2] Whether ComEd paid Beasley for his time painting the trailer is disputed. Both parties cite a typed note from 1995 listing 56 hours that Plaintiff reportedly "donated" to the project. Plaintiffs assert (without explanation) that the note shows that the 56 hours "counted toward [Beasley's] overtime payment and other benefits." (Plaintiffs' Local Rule 56.1 Response in Opposition [79] (hereinafter "Pls.' 56.1 Resp.") ¶ 9.)

6.) In 1994, ComEd used Mr. Beasley's drawings on a banner made for that year's rodeo. (*Id.* ¶ 8.)

Mr. Beasley asserts that he created the handshake image at issue in this case in 1995. (Pls.' 56.1 Resp. ¶ 14.) Beasley recalls that he submitted some of his drawings to ComEd for use on promotional materials associated with the 1996 rodeo, and that the handshake image was one of those submitted, by not selected by ComEd at that time.[3] (1994 Submission [32-6], Ex. C to Am. Compl.; Pls.' 56.1 Resp. ¶ 14.) Instead, ComEd selected an image called "Power Lineman of High Voltage Gear" (hereinafter the "high voltage image"). (Def.'s 56.1 ¶ 12.) Beasley understood ComEd would use that image on shirts and hats only; when ComEd later used the "high voltage image" on hats it distributed in the 1996 rodeo, Beasley asserted that this was an unlicensed use, and ComEd agreed to pay him one dollar for each of the 288 hats it had distributed, and to cease distributing any more of the hats. (Pls. 56.1 Resp. ¶ 12; 9/25/96 letter from DuPerow to Beasley [73-10], Exhibit J to Def.'s 56.1.) It is undisputed that Beasley had not been paid for any artwork he provided to ComEd prior to the 1996 dispute. Beasley explains that he provided ComEd with free artwork because it served to build his artistic resume and was good advertising for his business. (Pls.' 56.1 Resp. ¶ 13.)

Sometime in 1996 or 1997, ComEd safety coordinator Clarence Oliver asked Mr. Beasley for a drawing for use on the cover of ComEd's Safety Rule Book. (Z. Beasley Dep. at 23:11-21-24:7, 129:23-131:17, 137:14-139:21; 154:1-161:22, 171:20-173:11.) Mr. Beasley initially provided a drawing of a woman pointing to her hard hat, but when Oliver took that drawing to ComEd managers, they rejected it and specifically requested a handshake image. (*Id.*) What followed is disputed by the parties. According to ComEd, Mr. Beasley created the handshake image to comply

[3] The handshake image was created at the Beasley's home without the use of ComEd's materials or facilities. ((Pls.' Mem. in Opp'n to Def's Mot. for Summ. J. combined with Pls.' Mem. Supp. their Mot. for Summ. J. [78] (hereinafter "Pls.' Mem. for Summ. J.") at 4.)

with ComEd's specifications, and gave the image to Oliver for use on the Rule Book cover. (Pluskis Dep. [73-5], Ex. E to Def.'s 56.1, at 25:12-27:12.) According to Plaintiff, after explaining that the company did not want the drawing of the woman, Oliver suggested using the handshake image that Beasley had submitted, along with other images, for the 1995 Rodeo shirts. (Z. Beasley Decl. ¶ 7.) Beasley says that he reminded Oliver of the difficulties that resulted from ComEd's unlicensed use of the high voltage image. (*Id*; Z. Beasley Dep. at 129:23-131:17.) He nevertheless agreed to provide ComEd with the handshake image, but advised Oliver that the image was copyrighted and would not be given to the company. (Pls.' 56.1 Resp. ¶ 16.) The Beasleys modified the handshake image at home to make it suitable for reproduction. (Pls.' Mem. for Summ. J. at 5.) Mrs. Jefferson-Beasley's contribution consisted of tracing over the handshake image so that the image could be scanned, which involved cutting, lining, pasting, and straightening the artwork lines. (J. Beasley Dep. [73-2], Ex. B to Def.'s 56.1, at 52:17-52:22, 55:2-55:7, 57:19-58:5 1; Z. Beasley Dep. at 102:22-103:1; Z. Beasley Decl. ¶ 27.) Plaintiffs insist that the handshake image was given to Oliver with the condition that it be used on the cover of the Safety Book for the year 1997 only. (Z. Beasley Decl. ¶ 7.)

ComEd did use the handshake image on the 1997 Safety Rule Book cover. (Def.'s 56.1 ¶ 20; Pls.' 56.1 Resp. ¶ 20.) The following year, ComEd changed the cover of the Safety Rule Book to a plain white cover that displayed only the red ComEd company logo and the title. (Pls.' Mem. for Summ. J. at 6.) ComEd used the handshake image again for the 2003 and 2009 Safety Rule Book covers, however (Def.'s 56.1 ¶ 20)–according to Plaintiffs, without their permission or knowledge. How and when Plaintiffs became aware that the handshake image appeared on the 2003 and 2009 books is disputed. Plaintiffs claim that Mr. Beasley first discovered that ComEd had used the image on the 2009 Safety Rule Books at a training session in March 2009, where the 2009 Safety Rule Books were distributed. (Z. Beasley Decl.¶ 25.) Mr. Beasley asserts that he did not learn of ComEd's use of the handshake image on the 2003 Safety Rule Books until his deposition

in this case in 2012. (*Id*. ¶ 12.)

ComEd contends that it would have been impossible for Mr. Beasley to remain ignorant of its 2003 use of the image for so long. ComEd insists that Mr. Beasley must have seen the cover of the 2003 Safety Rule Book long before this litigation because he and the other ComEd employees he supervised were required to carry a Safety Rule Book. (Def.'s Mot. for Summ. J. at 16-17; Def.'s 56.1 ¶¶ 23, 25.) Beasley counters that the company did not issue a new Safety Rule Book to every lineman every year; instead, he asserts, new books were issued to new employees, and existing employees often received inserts to update their older editions of the book. (Pls.' Mem. for Summ. J at 7; Z. Beasley Declaration [77-2] ¶ 12.) Beasley points to the absence of any evidence that there were any new employees on his crew who would have been carrying the 2003 Rule Book. (Pls.' Mem. for Summ. J. at 5.)

As to the 2009 use, ComEd asserts that Mr. Beasley attended a "roll-out" session for the 2009 Safety Rule Book on January 15, 2009, at which the cover was displayed and some rule books were distributed. (Def.'s 56.1 ¶¶ 28, 30.) ComEd relies on an attendance sheet for the January 15, 2009 "Safety Rulebook Rollout" session that took place at ComEd's University Park location, where Mr. Beasley worked. (*See* Attendance Sheet [73-26], Ex. S. to Def.'s 56.1.) Mr. Beasley's printed name, a signature, and his employee identification number appear on the attendance sheet. (*See Id*.) Mr. Beasley claims that he did not sign the January 6, 2009 attendance sheet, that the signature that appears on it is a forgery, and that it has "long been common practice" for ComEd management to sign the names of missing personnel at meetings to satisfy requirements. (Z. Beasley Decl. ¶¶ 20, 21.)

The parties also dispute when Mr. Beasley first objected to ComEd's continued use of the handshake image. Plaintiffs contend that Mr. Beasley objected verbally when he attended the March 2009 rollout session. (Z. Beasley Resp. to Def.'s First Set of Interrogs. [73-17], Ex. Q to Def.'s 56.1, ¶ 5.) After the rollout session concluded, Beasley says he immediately informed his

Emergency Work Supervisor, Jeffrey Smith, that the image had been used with out his permission. (*Id*.) Beasley then brought the issue to Kimberly Miller in ComEd's Human Resources Department and objected verbally once again. (*Id*.) Mr. Beasley asserts that between March 14 and March 24, he spoke several times with Miller, who Beasley asserts spoke in turn to Ron Swart and Debra Staples.[4] (*Id*.) On March 24, 2009, Mr. Beasley alleges that he presented his grievance to ComEd's president Frank Clark, while Clark was visiting ComEd's University Park facility. (*Id*.) When ComEd failed to respond to Beasley's oral objections, he put his objection in writing in several e-mails in September 2009. (*Id*.) On September 22, 2009, Mr. Beasley sent an e-mail to Brian Rigg and Daniel Stremlau, stating that the image was owned by Ideas N Mind, Inc., and ComEd had used the image "without prior written permission."[5] (Sept. 22, 2009 E-mail [73-18], Ex. T to Def.'s 56.1.) Later that day, Beasley also communicated his objection to ComEd's use of the image via e-mail to Kevin Stepanuk, associate general counsel for Exelon Business Services. (*Id*.) ComEd asserts that these September 22, 2009 e-mails were the first objections Mr. Beasley made to its continued use of the image. (Def.'s Mot. for Summ. J. at 16.)

The parties also dispute whether the handshake image was registered with the U.S. Copyright Office. Mr. Beasley applied for and was granted a Certificate of Registration VA 694-412 (the "'412 Registration") for a number of images, effective January 3, 1995. (Def.'s 56.1 ¶ 46; '412 Registration [73-23], Ex. Y to Def.'s 56.1.) Plaintiffs allege that the handshake image was among the multiple images registered as a part of the '412 Registration. (Pls.' Mem. for Summ. J. at 4-6.) The handshake image, however, is not currently in the '412 Registration on file with the U.S. Copyright Office. Plaintiffs assert that at least eighteen pages and eighteen images are missing from the '412 Registration. (Def.'s 56.1 ¶ 47; Copyright Submission [32-6], Ex. C to Am. Compl.)

---

4 Swart and Staples' positions are not identified in the record.

5 Rigg's and Stremlau's positions are not identified in the record.

On January 5, 2009, Mr. Beasley signed a document that transferred copyright ownership of the handshake image to Ideas N Mind, Inc. (Z. Beasley Dep. [73-3] at 261:8-264:11, 272:9-273:15, Ex. C to Def.'s 56.1; Jan. 5, 2009 Agreement [73-22], Ex. X to Def.'s 56.1.) That same month, Beasley filed an application to register the handshake image. (Def.'s 56.1 ¶ 52.) The application was accepted and issued as Registration No. 1,670,178 (the "'178 Registration"). (Pl.'s 56.1 Resp ¶ 52.) The '178 Registration application lists Mr. Beasley as the sole author and Ideas N Mind as the sole copyright claimant. (*Id.*)

**DISCUSSION**

As noted, both sides have moved for summary judgment. Defendant argues that Mr. and Mrs. Beasley have no standing to pursue a copyright claim because Ideas N Mind is the sole owner of the copyright. Further, Defendant contends it used the handshake image pursuant to an express or implied license. Finally, Defendant contends that because there was no registered copyright as of the date of the alleged infringement, Plaintiffs are entitled to recover no more than their actual damages. Plaintiffs, for their part, seek summary judgment in their favor on the issue of liability only.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In considering a summary judgment motion, the court construes the evidence and all inferences in the light most favorable to the nonmoving party. *O'Connor v. DePaul Univ.*, 123 F.3d 665, 669 (7th Cir. 1997). Once a motion for summary judgment has been properly supported, the opposing party has the burden of setting forth specific facts which present a genuine issue of fact for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly-supported motion for summary judgment. *See Anderson*, 477 U.S. at 247-48. The court will grant summary judgment against a party who does not produce evidence that would reasonably permit the finder of fact to find in its

favor on a material question. *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995). In this case, where both sides seek summary judgment, the court evaluates each motion by construing the facts against the non-moving party. *Federal Trade Comm. v. Cleverlink Trading Ltd.,* 519 F. Supp.2d 784, 792 (N.D. Ill. 2007).

**I. Copyright Infringement**

To establish ownership of a valid copyright, the handshake image must be copyrightable and the Plaintiffs must own the copyright. What is copyrightable is governed by the Copyright Act, which provides that "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated." 17 U.S.C. § 102(a); *New York Times Co. v. Tasini*, 533 U.S. 483, 493 (2001). An original work is one that was created by the author and possesses a 'minimal degree of creativity,' or 'the existence of . . . intellectual production, of thought, and conception.' " *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (quoting *Feist Publ'ns*, *Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 362 (1991).)

A plaintiff claiming copyright infringement is required to show both "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns,*, 499 U.S. at 361. Certain aspects of this test are not challenged here. ComEd does not dispute that it used an almost exact reproduction of the handshake image on its Safety Rule Books in 2003 and 2009. Nor has ComEd challenged Plaintiffs' claim that the handshake image is copyrightable. The court agrees that the elements necessary for copyright to attach are present: First, the image is fixed in a tangible medium by being drawn onto paper. *See* 17 U.S.C. § 102(a). Second, the image is an "original work of authorship" because Mr. Beasley created the drawing. Third, the image possesses the minimal level of creativity necessary because it was not copied from any previous artwork, but is a product of Mr. Beasley's own intellectual conception. The court finds that the

image is a copyrightable expression as a pictorial two-dimensional graphic work. 17 U.S.C. 102(a)(5).

**A. Authorship of the Image**

What is disputed is, first, Mrs. Jefferson-Beasley's claim of authorship. (Def.'s Mot. Summ. J. at 12.) The '178 registration application lists Mr. Beasley as the sole author, and Ideas N Mind as the sole copyright claimant. (Pl.'s 56.1 Resp ¶ 52.) Mrs. Jefferson-Beasley claims to be a joint author of the work based on her contribution. Under Section 101 of the Copyright statute, a joint work is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. In *Erickson v. Trinity Theatre, Inc.*, the Seventh Circuit determined that this language requires (1) intent to create a joint work; and (2) contribution of independently copyrightable material. 13 F.3d 1061, 1068, 1071 (7th Cir. 1994). As to the first prong, the question is whether the Beasleys "'intended to be joint authors at the time the work was created.'" *Janky v. Lake Cnty. Convention and Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009), quoting *Erickson*, 13 F.3d at 1070. The collaborators need not have intended to recognize one another as co-authors; instead, the focus is on their intent to work together in the creation of a single product, not on the legal consequences of that collaboration. *Janky*, 576 F.3d at 361. The Beasleys claim the handshake image was a joint work, and in the absence of evidence to the contrary, the court will assume this was their intent.

Mrs. Beasley's contribution, however, does not consist of independently copyrightable material. A contributor is a "joint author" only if both the collaborators can be considered an author independently. *Erickson*, 13 F.3d at 1068-71. For purposes of this determination, the Seventh Circuit has rejected the notion that a joint author is one who has made a "more than de minimis contribution." *Id.* at 1070. Rather, the Seventh Circuit embraced the "joint authorship" test which requires that the contribution be independently copyrightable. *Id*. In *Erickson*, the court held that the alleged joint author of a play was not a joint author where his contributions were limited to

"[i]deas, refinements, and suggestions," because by themselves these contributions were not copyrightable. *Id*. at 1072.

In this case, Mrs. Jefferson-Beasley's contribution was to trace the outline of the actual sketch by "cutting, lining, pasting, and straightening lines" to reduce the size so that it could scan into the computer. (Z. Beasley Aff. ¶ 27; J. Beasley Dep. at 52:17-22, 55:2-7, 57:19-58:5; Z. Beasley Dep. at 102:22-103:1.) Unlike the joint author in *Janky*, Mrs. Jefferson-Beasley did not exercise "considerable control" over the drawing and did not make "significant contributions." *See* 576 F.3d at 362. Merely copying and resizing an existing work is a less substantial contribution than the ideas, refinements, and suggestions rejected by the *Erickson* court. Measured against the standard developed in *Erickson*, Mrs. Jefferson-Beasley's tracing and scanning of Mr. Beasley's drawing is not copyrightable. Her contributions did not change the overall intellectual conceptions of the author. Defendant is entitled to summary judgment on the issue of Mrs. Jefferson-Beasley's claim of joint authorship.

**B. Transfer of Copyright Ownership**

ComEd concedes that Mr. Beasley made a creative contribution to the handshake image, but argues that his claim must also be dismissed because he does not own the copyright in the image. A party must have legal ownership of the copyright to sue for infringement. *Cf. FM Industries, Inc. v. Citicorp Credit Servs.,* 614 F.3d 335, 336-37 (7th Cir. 2010) (if plaintiff corporation had transferred copyright to its principal shareholder, the corporation may not enforce the copyright). As ComEd emphasizes, Mr. Beasley transferred all rights to the image to Ideas N Mind in a written agreement dated January 5, 2009. (Jan. 5, 2009 Agreement.) Mr. Beasley admits that he executed the January 5, 2009 agreement to transfer the copyright to Ideas N Mind, and that Ideas N Mind has not transferred those rights back to him. (Z. Beasley Dep. at 261:8-264:11, 272:9-273:15.) Plaintiffs contend that because the agreement is subject to a right of reversion upon demand by Mr. Beasley, both Mr. Beasley and the corporation are appropriate plaintiffs. (Pl.'s

Mem. for Summ. J. at 12.) Plaintiffs cite no authority for this argument, however, and have not suggested that Mr. Beasley has in fact exercised any right to reversion. As long as Mr. Beasley does not have legal ownership of the copyright, he may not sue for infringement. *See Feist*, 499 U.S. at 361. Since neither of the Beasleys have an ownership interest in the copyright, ComEd's motion for summary judgment is granted as to Plaintiffs Jeanette A. Jefferson-Beasley and Zachary P. Beasley.

## II. Affirmative Defenses

As noted, ComEd has not challenged the claim that it copied the handshake image on safety books and other materials in 2003 and 2009. Instead, ComEd raises two affirmative defenses: First, that Beasley effectively transferred exclusive ownership in the handshake image to ComEd; and second, that by his conduct, Beasley granted ComEd a permanent implied license to use the image. The court will address each defense in turn.

### A. Exclusive License

ComEd first contends that Mr. Beasley gave it exclusive ownership of the handshake image. A copyright owner may transfer to another person any of the exclusive rights the owner has in the copyright; however, such a transfer must be made in writing. 17 U.S.C. § 204(a); *see also Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557-58 (9th Cir. 1990). In support of its argument, ComEd relies on two letters that Mr. Beasley wrote for inclusion in his personnel file, describing his contributions to the company. (Def.'s Mot. Summ. J. at 5-7, 13; Jan. 6, 2004 Letter; June 18, 2001 Letter.) In the first letter, written in January 2001, Mr. Beasley stated in part that he "design[ed] the cover of the safety book." (June 18, 2001 Letter.) ComEd finds it noteworthy that in this letter, Beasley did not state the he owned the image at issue. (Def.'s Mot for Summ. J at 6.) The court agrees with ComEd that the letter does not make a claim of ownership, but disagrees that the silence is significant. In light of the purpose of the letter, Beasley's failure to make a specific assertion of ownership does not indisputably constitute a transfer of ownership to ComEd.

ComEd also relies on a June 2004 letter in which Mr. Beasley states that "several art designs were given to this company including the logo for the safety book." (Jan. 6, 2004 Letter.) ComEd argues that Mr. Beasley's use of the word "given" demonstrates that Beasley conveyed an exclusive license for use of the handshake image to ComEd. (Def.' Mot. Summ. J. at 13.) Again, the court disagrees that this letter requires summary judgment in favor of ComEd on this issue. As Plaintiffs acknowledge, Mr. Beasley did "give" the handshake image to ComEd, but they argue he did so only for use during 1997. (Pls.' Mot. Summ. J. at 10.) In any event, the 2004 letter, written several years after Beasley first permitted ComEd to use the image, touts Beasley's past contributions, but does not expressly transfer any rights to ComEd. Mr. Beasley's use of the term "gave" in this context is at best subject to more than one interpretation.

The court is not prepared to conclude, as a matter of law, that Mr. Beasley granted ComEd an exclusive license to the image in his letters. What, if anything, he intended to convey about the nature and extent of rights transferred to ComEd is an issue of material fact to be decided by the jury.

**B. Nonexclusive License**

ComEd also argues, in the alternative, that Mr. Beasley granted it a permanent implied license to use the image. The existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996). In the case of an implied nonexclusive license, the creator of the work does not transfer ownership of the copyright to the licensee, but instead simply permits the use of the copyrighted work in a particular manner. *Id.* at 775-76. Unlike an exclusive license, a "nonexclusive license may be granted orally, or may even be implied from conduct." Melville B. Nimmer & David Nimmer, 3 NIMMER ON COPYRIGHT § 10.03[A][7] at 10-53. A nonexclusive license is, therefore, an exception to the writing requirement of section 204. *See Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02 C 2523, 2003 WL 1720073, *`10 (N.D. Ill. Mar. 31,

2003) (A nonexclusive license is an affirmative defense to copyright violation and may be found even in the absence of an express written agreement). In *I.A.E., Inc. v. Shaver*, the Seventh Circuit agreed that "an implied nonexclusive license has been granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." 74 F.3d at 776, citing *Effects Assocs.*, 908 F.2d at 558-59. In fact, consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing. *I.A.E.,* 74 F.3d at 775. But a licensee can still infringe the copyright if "its use exceeds the scope of its license." *Id.* at 775 n.8 (quoting *S.O.S., Inc. v. Payday, Inc*., 886 F.2d 1081, 1087 (9th Cir. 1989)); *see also Glovaroma, Inc. v. Maljack Prods., Inc*., 71 F. Supp. 2d 846, 855-56 (N.D. Ill. 1999) (denying summary judgment on an infringement claim where scope of license was unclear).

ComEd argues that Mr. Beasley granted ComEd a permanent implied license to use the handshake image when he permitted Defendant to use it as a logo. (Def.'s Mot. Summ. J. at 14.) Plaintiffs urge, again, that the image was only licensed for a period of one year in 1997. (Pls.' Mot. Summ. J. at 10.) They note that ComEd discontinued its use of the image in 1998, suggesting that this demonstrates ComEd's awareness that the license was limited to 1997. (*Id*.) ComEd emphasizes Mr. Beasley's failure to object to the use of the image for the 2003 Safety Book, and his failure to object to the 2009 Safety Book until approximately nine months after that Book was issued. This failure, in ComEd's estimation, shows that Beasley intended and agreed to ComEd's use of the image on those Books–conduct that gives rise to a nonexclusive license. (Def.'s Mot. Summ. J. at 16.) As explained above, however, when Mr. Beasley became aware of the 2003 and 2009 uses of the image is disputed. While ComEd contends that Mr. Beasley must have seen the cover of the 2003 Safety Rule Book long before this litigation (Def.'s Mot. for Summ. J. at 16-17; Def.'s 56.1 ¶¶ 23, 25), Beasley has shown that a jury could conclude that he did not. Specifically,

Beasley asserts that the new Safety Rule Books were not issued to every lineman every year, but rather new books were issued to new employees, and existing employees received inserts to update their older editions of the book. (Pl.'s Mot. for Summ. J. at 7.) Beasley alleges that there were no new employees on his crew who would have been carrying the 2003 Rule Book, and Defendant has not effectively established the contrary. (*Id.*)

The parties also dispute when Beasley became aware of the 2009 use, and, more importantly, when he objected to it. Beasley insists that he objected immediately and repeatedly to several ComEd employees and put his objections in writing in September, only after ComEd failed to respond to his verbal objections. When Beasley became aware of ComEd's 2003 and 2009 uses of the handshake image, when and the extent to which he objected to it, and whether his conduct creates an implied nonexclusive license, are disputed issues of fact. *See Shaver*, 74 F.3d at 775. On the record here, the court cannot determine as a matter of law that ComEd had an implied nonexclusive license to the handshake image. ComEd's motion for summary judgment is denied as to Plaintiff Ideas N Mind's copyright infringement claim. But because a jury may conclude that Mr. Beasley did give ComEd a license, Plaintiffs' motion for summary judgment of liability on the copyright infringement claim must also be denied.

**III. Damages Available to Plaintiffs for Copyright Infringement**

Finally, ComEd argues that the Plaintiffs are not entitled to recover any damages. According to ComEd, Plaintiffs have announced they are seeking only statutory damages,[6] but such damages are unavailable, ComEd urges. ComEd is correct that in order for a copyright holder to recover statutory damages, the copyright must be registered with the U.S. Copyright Office before the infringement occurs. The statute provides:

---

[6] The complaint seeks recovery of "all profits and advantages gained from infringing the Plaintiffs' copyrights but no less than the statutory damages." (Complaint [1] at 3.) The court notes no basis in the circumstances of this case for a conclusion that ComEd profited in any fashion from its use of the handshake image on its internal Safety Book.

> In any action under this title [with inapplicable exceptions]. . . no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for--
>
> > (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412. The Copyright Act provides the owner of a copyright with multiple remedies against an infringer of his work, including injunctions and monetary relief. §§ 502-505. The copyright statute is not primarily designed for a copyright owner's private recovery, however. Rather, the chief purpose is to "motivate the creative activity of authors and inventors by the provision of a special reward, and to allow the public access to the products of their genius after the limited period of exclusive control has expired." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 428-34 (1984). Moreover, copyright protection has never accorded the copyright owner complete control over all possible uses of his work. Authors must take some responsibility to protect their work if they wish to receive statutory damages: specifically, in order to recover statutory damages, the copyright holder must have registered the work with the Register of Copyrights before the alleged violation. *Rudnicki v. WPNA 1490 AM*, 580 F. Supp. 2d 690, 692-93 (N.D. Ill. 2008).

ComEd points out that the handshake image at issue in this case was not registered until April 2009, after the alleged infringement occurred. Plaintiffs challenge this conclusion; they contend that the handshake image was registered in 1994 with the U.S. Copyright Office, before the first publication of the image in 1997 and the alleged copyright violations in 2003 and 2009. (Pls.' Mot. Summ. J. at 5.) But the '412 registration granted in January 1995 does not include the handshake image. ('412 Registration.) Plaintiffs suggest that the Register of Copyrights misplaced certain filings, including the handshake image, but they offer no admissible evidence to support this. (Pls.' Mot. Summ. J. at 6.) Instead, they offer hearsay: Mr. Beasley asserts that he called the U.S.

Copyright Office in March 2009 and that the person he spoke to on the phone confirmed that the handshake image was registered as of 1995. (Z. Beasley Dep., Ex. C to Def.'s 56.1, at 80-82.)

What is clear is that a copyright in the handshake image issued in April 2009, just months after ComEd began using the 2009 Safety Book.[7] ('178 Registration.) On the face of the '178 registration, the handshake image's registration date is April 19, 2009, well after the alleged violations in 2003 and 2009. ('178 Registration.) If, as Plaintiffs now contend, the registration date is an error resulting from the U.S. Copyright Office's misplacement of materials, they have offered no explanation for their apparent failure to obtain an amended registration. This court has no power to make an exception to the statutory scheme. Because the infringing use occurred before the registration date, no statutory damages are available and Plaintiffs' recovery is limited to their actual proven damage, if any.

**CONCLUSION**

For the reasons discussed above, Plaintiffs' motion for summary judgment [78] is denied and Defendant's motion for summary judgment [74, 75] is granted in part and denied in part. Claims brought by Plaintiffs Zachary Beasley and Jeanette Jefferson-Beasley are dismissed. The claim of Plaintiff Ideas N Mind survives this motion, but Ideas N Mind is entitled to its actual damages, if any, only.

ENTER:

Dated: August 28, 2013

REBECCA R. PALLMEYER
United States District Judge

---

[7] Notably, Mr. Beasley both signed a document transferring copyright ownership of the handshake image to Ideas N Mind (Jan. 5, 2009 Agreement), and filed what he claims to be a second application to register the handshake image in January 2009. (Def.'s 56.1 ¶ 28, 52.)